UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFREDIE STEELE, JR.

     Applicant,

v.                                  CASE NO. 8:11-cv-2825-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Alfredie Steele, Jr., applies for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state conviction for first-degree

murder.  Steele alleges ten grounds of trial court error and two grounds of ineffective

assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __") support

the response.  (Doc. 14)  Steele moves for (1) "immediate relief" (Doc. 29), (2) a writ

of mandamus (Doc. 30), and (3) appointment of counsel (Doc. 31).

## FACTS[1]

Pasco County Sheriff's Deputy Charles Harrison parked his marked police

cruiser at a convenience store.  Two other deputies saw Harrison inside his cruiser.

As they approached Harrison they heard shots coming from a nightclub a few yards

---

[1]  This factual summary derives from Steele's brief on direct appeal and the record.
(Respondent's Exhibits 4, 5)

away, and the deputies responded.  After concluding their investigation at the night club, the two deputies returned to Harrison's cruiser parked in the convenience store parking lot.  The deputies discovered Harrison was not breathing and called an ambulance.  Paramedics arrived and found Harrison with a fatal gun shot wound to his back.

Steele's cousin implicated him in the crime.  Steele's mother voluntarily brought Steele to the police station where he received *Miranda* warnings and gave incriminating statements to the police.  The police allowed Steele to leave the police station.  Steele subsequently contacted the police and voluntarily returned to the police station where he gave another statement.  Steele was arrested and charged with first-degree murder.  A jury convicted Steele, and he serves life imprisonment.[2]

## I.   COGNIZABILITY, EXHAUSTION, AND PROCEDURAL BAR

**Ground One**

The state's weapon specialist testified on cross-examination at trial about photographs of firing pin impressions in the shell casings recovered from the crime scene.  The trial judge admitted the photographs into evidence.  Steele contends that the photographs were never presented to either the defense or the jury.  He alleges that "[b]y not holding a hearing and demanding [that] this evidence be turned over [to the defense], the trial judge deprived [him] of evidence that was of strategic

---

[2] Steele faced the death penalty. The trial judge followed the jury's sentencing recommendation of life imprisonment.

importance," resulting in a violation of both *Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971), and his due process right "to have all of the evidence presented" to the jury.  (Doc. 1, p. 9)

To the extent he argues that the trial judge erred under state law by admitting the photographs and by misapplying *Richardson*, Steele cannot obtain relief because his claim is not cognizable in a federal habeas application.  Whether the trial judge properly followed state evidentiary rules or properly applied *Richardson* is a matter of state law.  Federal habeas relief for a person in custody under the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  *See Wainwright v. Goode*, 464 U.S. 78, 83–84 (1983) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.") (citations omitted); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990) ("A writ of habeas corpus is available in federal court only in cases of constitutional error.").  The district court lacks subject matter jurisdiction to address ground one, which presents no federal constitutional question.  28 U.S.C. § 2254(a).  *See also Swarthout v. Cooke*, ___ U.S. ___, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions."). The limitation of federal habeas review to an allegation of federal constitutional error applies with equal force if a ground governed by state law is presented under the guise of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).[3] Consequently, ground one warrants no relief.

Notwithstanding cognizability, a procedural bar precludes a merits review of ground one. Steele raised the ground in his state Rule 3.850 motion rather than on direct appeal. The state post-conviction court rejected ground one (Respondent's Exhibit 23, p. 1):

> Defendant claims that the court made a "procedural prejudice error during [a] proffer concerning a *Richardson* violation when [his] defense attorney was cross-examining the FBI weapons specialist at trial." This claim is not, however, cognizable in a motion for post-conviction relief. A claim of trial court error must be raised on direct appeal and not in a Rule 3.850 motion. *Williams v. State*, 24 So. 3d 729 (Fla. 3d DCA 2009); *Harvey v. Dugger*, 656 So. 2d 1253 (Fla. 1995). This claim for relief is, therefore, denied.

The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas corpus proceeding. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 97 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). "However, a state court's rejection of a federal

---

[3]   Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly confirms relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner."  *Judd*, 250 F.3d at 1313.

The state post-conviction court's express rejection of ground one on an independent and adequate state procedural bar and the state appellate court's affirmance of that bar preclude federal review.  *Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A] federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default.").  *See also Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (finding that the state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground that bars federal review).  Steele's failure to exhaust his federal ground in state court causes a procedural default.

Under the procedural default doctrine, "[i]f the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that errors at the trial created the possibility of prejudice but that the errors worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Without a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires an applicant's "actual innocence." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental

miscarriage of justice" exception, Steele must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Steele fails to demonstrate cause and prejudice excusing the default of ground one. *Carrier*, 477 U.S. at 495–96. Steele cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Steele satisfies neither exception to procedural default, ground one is procedurally barred from federal review.[4]

**Grounds Three, Four, Five, and Eight**

In ground three Steele contends that the prosecutor committed misconduct by repeatedly telling the jury that an SKS semi-automatic rifle was the murder weapon even though the state failed to produce the weapon at trial. In ground four Steele contends that the prosecutor improperly commented in closing argument on Steele's

_____

[4] The respondent argues in the response (Doc. 14, p. 15) that "Steele's ground, although raised in constitutional terms, raises an alleged violation of the state's discovery rule, which does not present a cognizable basis for relief. He does not allege a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) . . . ." Steele in his reply (Doc. 17, p. 16) states that "[w]hen framed under *Brady*, this claim does, in fact, fall under this court's jurisdiction." To the extent that Steele attempts to assert a *Brady* claim for the first time in his reply as an independent basis for relief, he cannot obtain federal review. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'").

Moreover, the *Brady* claim is unexhausted because Steele, failing to raise the claim in state court, committed a procedural default. Steele fails to demonstrate cause and prejudice excusing the default of the *Brady* claim. *Carrier*, 477 U.S. at 495–96. Steele cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Steele satisfies neither exception to procedural default, a separate *Brady* claim is procedurally barred from federal review.

right to remain silent.  In ground five Steele contends that his conviction results from "unlawful practices" and "unconstitutional methods."[5]  In ground eight Steele contends that the trial judge abused his discretion by not holding an evidentiary hearing "concerning any and all incriminating statements made by [Steele]." (Doc. 1, p. 16)  Steele also contends in ground eight that the trial judge abused his discretion by not holding an evidentiary hearing when Steele was prevented from securing a witness whom he alleges was in federal custody and readily available for trial.  The respondent correctly argues that each ground is unexhausted and procedurally barred from federal review because Steele failed to assert each claim on direct appeal.

The state post-conviction court rejected each ground for not complying with a state procedural rule (Respondent's Exhibit 23, p. 2):

> Issue Three:  Defendant claims that his conviction was obtained by prosecutorial misconduct. This claim is not cognizable in a motion for post-conviction relief. A claim of prosecutorial misconduct must be made, if applicable, at trial and raised on direct appeal. This claim is therefore denied.
>
> Issue Four:  The defendant alleges that the prosecutor commented improperly on defendant's right to remain silent. An objection to alleged improper comments by the prosecutor must be made at trial when they occur and then should be raised on direct appeal. This is a claim that may not be made in a motion for post-conviction relief filed under rule 3.850. Therefore, this claim is denied.
>
> Issue Five:  Defendant alleges that his conviction was "obtained illegally with unconstitutional methods; the state used private citizens as agents or instruments to assist in the arrest of the

---

[5] Steele claims that the police illegally collected evidence by manipulation and used coercion to solicit statements from him and other "private citizens." (Doc. 1, p. 14)

> defendant and coerce the defendant into statements to the police that were used for a conviction." This claim may not be brought in a motion for post-conviction relief under rule 3.850. Defendant was present at the trial and could have made an objection, if appropriate, at that time. Thereafter, defendant should have raised this issue on direct appeal. Accordingly, this claim is denied.
>
> . . . .
>
> Issue [Eight]:  Here the defendant asserts that the trial court abused its discretion on two occasions. This issue is a claim of error by the trial court and is therefore procedurally barred as it could and should have been raised on direct appeal and not in a rule 3.850 motion. *Williams v. State*, 24 So. 3d 729 (Fla. 3d DCA 2009). This claim is therefore denied.

The state post-conviction court's application of an independent and adequate state procedural bar to reject grounds three, four, five, and eight leaves the grounds unexhausted and results in a procedural default. *Harris*, 489 U.S. at 262.  Steele fails to demonstrate cause and prejudice excusing his default. *Carrier*, 477 U.S. at 495–96. Steele cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327.  Because Steele satisfies neither exception to procedural default, grounds three, four, five, and eight are procedurally barred from federal review.

**Ground Nine**

Steele contends that his trial counsel rendered ineffective assistance by conceding Steele's guilt without Steele's permission.  Steele did not raise this ground in his first Rule 3.850 motion.  He presented this ground to the state court for the first

time in his supplemental Rule 3.850 motion.[6]  (Respondent's Exhibit 32)  The state

post-conviction court dismissed the supplemental Rule 3.850 motion because Steele

filed the motion while the appeal of the denial of his first Rule 3.850 motion was

pending, which divested the state post-conviction court of jurisdiction.[7]

Consequently, ground nine is unexhausted and procedurally defaulted.

Steele fails to demonstrate cause and prejudice excusing his default.  *Carpenter*,

529 U.S. at 451; *Carrier*, 477 U.S. at 495–96.  He neither alleges nor shows that the

fundamental miscarriage of justice exception applies.  *Henderson*, 353 F.3d at 892.

Because Steele fails to proffer specific facts showing an exception to procedural

default, ground nine is procedurally barred from federal review.

**Grounds Ten and Twelve**

In ground ten Steele contends that, because the prosecutor failed to produce

sufficient evidence of premeditation, the trial judge erred in denying Steele's motion

for judgment of acquittal.  In ground twelve Steele contends that the state court erred

_____

[6]  Steele does not allege in the federal application when or how trial counsel allegedly
conceded Steele's guilt. When he raised this ground in his supplemental Rule 3.850 motion Steele
argued that trial counsel's statement in closing argument, "You can believe the defendant when he
said he shot into the car, but you must believe he did not mean to hurt anyone," improperly
conceded Steele's guilt despite Steele's explicit instruction that counsel "not under any
circumstances, tell the jury [Steele is] guilt[y] of anything." (Respondent's Exhibit 32, p. 15)

[7]  The state post-conviction court concluded (Respondent's Exhibit 33):

Defendant filed an appeal of the court's denial of his Motion for Post-conviction
Relief . . . . Records reflect that Defendant's direct appeal is currently
pending . . . . The filing of the appeal divested this court of jurisdiction to consider
th[is] . . . motion. *See Othouse v. State*, 912 So. 2d 682 (Fla. 2d DCA 2005). The court
notes, however, that even if re-filed after the conclusion of the appeal, Defendant's
motion maybe considered a successive motion barred by Rule 3.850(f).

by denying his motion *in limine* to exclude a "clearly inflammatory" photograph of Steele holding an SKS rifle.  When he presented each ground to the state court on direct appeal, Steele argued only a violation of state law and did not alert the state court to a federal constitutional violation.  To the extent that he attempts in the federal application to assert a federal due process claim based on either the insufficiency of the evidence, the trial judge's denial of his motion for judgment of acquittal, or the denial of his motion *in limine*, Steele cannot obtain relief because the due process claim is unexhausted.

Before a federal court can grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged

violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust each available state court remedy as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (quotations and citations omitted).

In his direct appeal Steele argued (1) that the state failed to present sufficient evidence to satisfy the burden of proof under Florida law[8] and (2) that the trial

---

[8] Steele argued on direct appeal (Respondent's Exhibit 5, pp. 21, 25):

> In a recent case, the Florida Supreme Court found that even though direct evidence existed to establish other elements of the offense, if the only evidence to establish premeditation is circumstantial evidence the court must use the special standard of review regarding the establishment of the element of premeditation. *Walker v. State*, 957 So. 2d 560 (Fla. 2007). Thus, the special standard of review as pronounced in *Pagan*, *supra*, i.e., the evidence must exclude the defendant's reasonable hypothesis of innocence, applies to the analysis of whether there was sufficient evidence to establish the element of premeditation.

(continued...)

[8](...continued)

. . . .

In the instant case the state did not present sufficient circumstantial evidence establishing premeditation by which the jury could exclude every other reasonable hypothesis of innocence.

Steele's reliance on Florida's circumstantial evidence standard coupled with his failure to assert a federal constitutional claim did not alert the Florida courts of a federal sufficiency of the evidence claim. As *Preston*, 785 F.3d at 460–61, explains:

For starters, in cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard. While Florida may apply the Jackson standard in resolving an ordinary sufficiency claim, *see, e.g., Melendez v. State*, 498 So. 2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," *Thorp v. State*, 777 So. 2d 385, 389 (Fla. 2000) (*per curiam*) (quotation omitted). It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id.* (quotation omitted); *see, e.g., Lowe v. State*, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt").

It is precisely the Florida rule, however, that the Supreme Court has rejected as a matter of federal law. In *Jackson*, the case upon which Preston rests his entire sufficiency of the evidence challenge, the Court instructed that a petitioner is entitled to relief under the Due Process Clause only if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S. Ct. 2781. Under federal law, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326, 99 S. Ct. 2781. This remains true even when the only evidence relied on is "circumstantial evidence in the record." *Id.* at 324, 99 S. Ct. 2781. Thus, in cases involving circumstantial evidence, whether a defendant raises his sufficiency claim in terms of state or federal law can matter a great deal.

Preston invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction. . . . We can safely assume that when the Florida Supreme

(continued...)

judge wrongfully denied his motion *in limine* under state law and state rules of evidence.  (Respondent's Exhibit 5, pp. 19–26, 41–45)  Steele did not cite in his state appellate brief either a federal case or a federal constitutional provision, nor did he label either claim "federal."  *Baldwin*, 541 U.S. at 32.  *See also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas v. Sec'y, Dep't of Corr.,* 682 F.3d 1342 (11th Cir. 2012), "stand for the proposition that a[n] [applicant] with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").  Steele's failure to present to the state court a federal due process claim deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Boerckel*, 526 U.S. at 845.  *See also Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."); *Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state

---

[8](...continued)

Court considered Preston's appeal, it did so through the prism of this longstanding state doctrine, rather than federal law. The Florida Supreme Court had no opportunity to even consider federal law, because, as we've explained, Preston never once raised *Jackson*, the *Jackson* standard, any federal cases, the Due Process Clause or any other constitutional provisions, or, indeed, even referenced the word "federal" in his briefing on this claim.

Any federal claim that Preston could have brought would have been judged by a different standard than the state claim he actually did bring.

courts").  Both ground ten and ground twelve are unexhausted and procedurally

defaulted.  Steele meets neither the "cause and prejudice" exception nor the

"fundamental miscarriage of justice" exception to overcome the default.

Consequently, grounds ten and twelve are procedurally barred from federal review.

## II.   <u>MERITS</u>

As determined above, grounds one, three through five, eight through ten, and

twelve are entitled to no federal review.  Steele's remaining four grounds (two, six,

seven, and eleven) are exhausted and entitled to a review on the merits.

<u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694  (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526

U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It

is the objective reasonableness, not the correctness *per se*, of the state court decision

that we are to decide."). The phrase "clearly established Federal law" encompasses

only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Steele's original Rule 3.850 motion to vacate. (Respondent's Exhibit 11) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief,

it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the

state court.

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 131 S. Ct. at 1398.  Steele bears the burden of overcoming by clear and

convincing evidence a state court factual determination.  "[A] determination of a

factual issue made by a State court shall be presumed to be correct.  The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v.

Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Steele's post-conviction claims warrants deference in this case.

### STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Steele claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas [applicant]s can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Steele must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691–92.  To meet this burden, Steele must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Steele cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751

(1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d), Steele must prove that the state court's decision

was "(1) . . . contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States

or (2) . . . based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so."  *Richter*, 526 U.S. at 105.  *See also Pinholster*, 131 S. Ct. at 1410 (An

applicant must overcome this "'doubly deferential' standard of *Strickland* and the

AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)

("Double deference is doubly difficult for a[n] [applicant] to overcome, and it will be

a rare case in which an ineffective assistance of counsel claim that was denied on the

merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Two**

Steele alleges that the "state based its entire cause on circumstantial evidence

manufactured by detectives" and that "the 'evidence' was not sufficient to uphold a

conviction of first-degree murder."[9]  Steele contends that his trial counsel rendered ineffective assistance by not moving for a new trial based on the verdict being contrary to the weight of the evidence.

The state post-conviction court rejected this ground in Steele's Rule 3.850 motion (Respondent's Exhibit 23, pp. 2–3):

> [D]efendant alleges that counsel was ineffective for failing to file a motion for new trial on the grounds that the verdict was contrary to the weight of the evidence. In a motion for post-conviction relief the defendant bears the burden of establishing a prima facie case based on a legally valid claim. *See Griffin v. State*, 866 So. 2d 1 (Fla. 2003). Conclusory allegations are not enough to meet this burden. *Id*. at 9. The court finds that defendant's allegations are too speculative and general to sufficiently allege ineffective assistance of counsel. Defendant does not offer any facts in support of this claim or explain how the filing of such a motion on this unexplained ground would have made a difference in this case. This claim does not, therefore, meet the pleading requirements of rule 3.850 and is denied.

In his federal application Steele presents no facts to support this ground of ineffective assistance of trial counsel.  In his reply (Doc. 17, p. 17) Steele attempts to satisfy *Strickland* by stating that counsel's 'performance was deficient because in view of the evidence, or in this case, the lack thereof, a motion for new trial would be the obvious course of action to any effective counsel."  Steele argues that counsel's alleged error "prejudiced the defense because failure to file [a motion for new trial]

---

[9]  Neither Steele's direct appeal nor his Rule 3.850 motion presented to the state court an independent claim challenging the sufficiency of the evidence. Steele likewise presents no such claim in the federal application.

resulted in the unquestioned affirming of the verdict without proper review by the trial judge."

Steele presents no valid basis for relief.  *See Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (finding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Steele fails to establish that the state post-conviction court either unreasonably applied *Strickland* or unreasonably determined the facts in rejecting ground two.  28 U.S.C. § 2254(d)(1), (2).

### Grounds Six and Seven

In ground six Steele contends that the prosecutor failed to disclose to the defense favorable evidence that his trial counsel could have used to impeach a state witness.  In ground seven Steele again asserts that the state failed to disclose favorable evidence that would have "unquestionably exonerated him of all charges."  (Doc. 1, p. 15)  In the federal application Steele neither presents facts to support these grounds nor specifies what evidence the state allegedly withheld.  In his reply (Doc. 17, pp. 23–24) Steele cites to the facts he presented in his Rule 3.850 motion as support

for his federal application.[10]  Even considering those facts, Steele is entitled to relief

on neither ground six nor ground seven.

The state post-conviction rejected these grounds in Steele's Rule 3.850 motion

(Respondent's Exhibit 23, pp. 2–3):

> Defendant claims that his conviction was obtained by the
> prosecutor's failure to disclose favorable evidence:  a taped
> interview between a detective and a witness and "metal
> fragments," in violation of *Brady v. Maryland*, 373 U.S. 83
> (1963). To establish a violation of *Brady v. Maryland*, the
> defendant must show that (1) the state possessed evidence
> favorable to defendant because it was exculpatory or
> impeaching; (2) defendant did not possess the evidence nor
> could he obtain it with reasonable diligence; (3) the prosecution
> suppressed the evidence; and (4) if evidence had been disclosed,
> a reasonable probability exists that
> the outcome would have been different. The court finds that the
> defendant has not established that the state possessed favorable
> or exculpatory evidence it failed to disclose to the defense and
> also fails to demonstrate that the prosecution or the witnesses
> were untruthful. The defendant has not proven that the taped
> interview between Detective Christiansen and Sharon
> Higginbotham contained favorable evidence. In fact, defendant
> admits in his motion that the detective *attempted* to have the
> witness perjure herself but not that perjury was committed and

---

[10]  Steele presented the following facts to support ground six of his Rule 3.850 (Respondent's Exhibit 22, p. 11) (record citations omitted):

(a) Prosecution withheld evidence during trial that could have excluded every hypothesis of guilt when he did not produce a taped interview between D[etective] Christianson and witness Sharon Higginbotham, where D[etective] Christianson attempted to have Sharon Higginbotham perjure herself by changing her description of events as she saw them. This taped interview could have changed the outcome of trial.

(b) Prosecution withheld metal fragments found by forensic officer Denise Weigand for the jury to view. This information was damaging to the prosecution and was withheld. This information could have changed the outcome of the defendant's trial had it been presented.

In the federal application Steele presents, as two separate grounds for relief (grounds six and seven), the same allegations presented in ground six of the Rule 3.850 motion.

> also fails to explain how use of this recording would have
> changed the outcome of the trial. Defendant also does not
> explain how the disclosure of "metal fragments" allegedly
> withheld by the prosecutor would have changed the outcome of
> this trial. The court therefore finds this claim is too vague and
> speculative to consider. The claim is therefore denied.

A prosecutor's failure to disclose evidence favorable to a defendant violates due process if the evidence is material to either guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Brady*, 373 U.S. at 87). To establish a *Brady* violation, a defendant must prove (1) that the prosecutor possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecutor suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different if the prosecutor had disclosed the evidence to the defense. *United States v. Schier*, 438 F.3d 1104, 1106, n.1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).

Steele's vague and conclusory allegations warrant no relief. Steele cannot sustain his *Brady* claims because he establishes neither that the prosecutor possessed evidence favorable to the defense nor that the prosecutor suppressed evidence that was exculpatory or evidence that he could have used for impeachment. Neither ground six nor ground seven warrants relief. *Schier*, 438 F.3d at 1106, n.1.

**Ground Eleven**

Steele appeared at the sheriff's office and gave statements to the police on two

occasions:  when his mother brought him to the sheriff's office (the "initial

interview") and when Steele later called the sheriff's office requesting to return to

speak with detectives (the "second interview").  Steele filed two pre-trial motions to

suppress his statements from both interviews and alleged that the police violated his

rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  (Respondent's Exhibit 4, Vol. I,

pp. 114–15; Vol. II, pp. 244–46)   Steele argued that he uttered the statements while

"in custody" without the benefit of the *Miranda* warning.  The trial judge denied both

motions after two hearings.  (Respondent's Exhibit 4, Vol. III, pp. 249–377,

380–81)  Steele argues in the federal application both (1) that the state court's

erroneous conclusion that he was not in custody when he uttered his statements

results in a violation of his Fifth Amendment right and (2) that application of *Missouri*

*v. Seibert*, 542 U.S. 600 (2004), entitles him to relief.[11]

---

[11]  At the conclusion of the second suppression hearing the judge stated that she would hear
legal argument on the motions and noted that "any ruling I make, I have to announce the findings
on the record." (Respondent's Exhibit 4, Vol. III, p. 118) The record shows that the trial judge held a
third hearing on April 23, 2004, to announce her findings and deny the motions. (Respondent's
Exhibit 4, Vol. I, state court docket entry dated April 23, 2004) The record omits a transcript of the
April 23, 2004, hearing. Steele argued on direct appeal that the state judge improperly denied the
two motions to suppress. The state appellate court rejected this ground in a *per curiam* decision
without a written opinion. (Respondent's Exhibit 8) In ground eleven of the federal application
Steele alleges that the state appellate court unreasonably rejected this ground.

Because the record includes neither a transcript of the April 23rd hearing nor other
documentation of the state judge's factual and legal findings on the motions to suppress, an earlier
order (Doc. 23) directed the respondent to advise the court whether the transcript was presented to
the state appellate court for consideration in Steele's direct appeal. The respondent advises (Doc. 26)
that a transcript of the April 23rd hearing was neither filed in Steele's criminal case nor presented to
the state appellate court in Steele's appeal. Consequently, because the record does not include the

(continued...)

To determine whether a suspect is "in custody," "a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 320 (1994). *See also United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001) (stating that whether a suspect is in custody "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave") (quotation marks and alterations omitted)). "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." *Moya*, 74 F.3d at 1119. Determining whether a suspect is "in custody" requires two discrete inquires: "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (internal footnote omitted). The first inquiry is a factual one and a state court's findings on "scene and action-setting questions" are entitled to a presumption

---

[11](...continued)
state judge's factual findings in denying the motions to suppress, those findings are accorded no deference in considering the merits of ground eleven of the federal application. The facts cited in this order are reviewed *de novo*.

of correctness.  *Thompson*, 516 U.S. at 112.  The second inquiry is a mixed question of law and fact requiring independent review that is not entitled to a presumption of correctness under Section 2254.  *Thompson*, 516 U.S. at 102, 112–13.  "Habeas relief is available under Section 2254(d)(1) only if the state court's decision is objectively unreasonable." *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004).

Detective Jeff Bousquet testified at the first suppression hearing that he, Detective Jennifer Christensen, and Detective James Medley, questioned Steele during the initial interview[12] at the sheriff's office and that Steele stated that he wished to speak to the police.  (Respondent's Exhibit 4, Vol. II, transcript of the March 4, 2004 suppression hearing, pp. 55–56)  Steele was not under arrest when he spoke to Detective Bousquet.  Steele's conversation with Detective Bousquet was videotaped and played for the judge at the suppression hearing.  The video shows that Steele stated the following to the police (Respondent's Exhibit 4, Vol. II, pp. 59–61):

> DETECTIVE BOUSQUET:  Okay. We already know you're down here. We're going to ask you a couple of things, okay? In your version, I'm asking you, do you know what took place?
>
> MR. STEELE:  Yes, sir.
>
> DETECTIVE BOUSQUET:  Could you tell me in your version what took place?
>
> MR. STEELE: Yes, sir.

---

[12] Steele's mother testified at the evidentiary hearing that she learned that the police wanted to speak to Steele. (Respondent's Exhibit 4 Vol. II, p. 91) She located Steele and brought him to the sheriff's office. Steele's mother further testified that she brought him into the sheriff's office because she "was scared for [her] son's life." (Respondent's Exhibit 4, Vol. II, p. 96) Steele testified at the evidentiary hearing that when his mother told him that he needed to talk to the police he felt that he had no choice but to comply. (Respondent's Exhibit 4, Vol. II, p. 103)

DETECTIVE BOUSQUET:  Go ahead, I'm listening to you.

MR. STEELE:  Saturday, Saturday night –

DETECTIVE BOUSQUET:  Uh-huh.

MR. STEELE:  I took (Unintelligible) to the woods to use it.

DETECTIVE BOUSQUET:  Okay.

MR. STEELE:  And, I don't know, I was just shooting.

DETECTIVE BOUSQUET:  Okay.

MR. STEELE:  Shooting. I went down by the river in Lacoochee to the Coach Head, you know, shot it off a few times.

DETECTIVE BOUSQUET:  Okay.

MR. STEELE:  And I (unintelligible)

DETECTIVE BOUSQUET:  Uh-huh.

MR. STEELE: And I just (unintelligible words) went to the club. I went in the club.

DETECTIVE BOUSQUET: Uh-huh.

MR. STEELE:  And, I don't know, I've been having a hard time, you know? A lot of my friends been dying.

DETECTIVE BOUSQUET:  I know. I know.

MR. STEELE:  When I left the club, I was just thinking about it. And I was drunk, drinking stuff. When I pulled out the club behind the bar, I didn't see no car sitting there. So I just went down and turned over. I didn't intend to hurt nobody or nothing.

DETECTIVE BOUSQUET:  Okay.

MR. STEELE: It was, like, I don't know, man, scared.

DETECTIVE BOUSQUET:  Okay. Did you fire that weapon?

MR. STEELE: Yes, sir, I think.

Once Steele implicated himself, Detective Bousquet ceased questioning and gave

Steele the *Miranda* warning (Respondent's Exhibit 4, Vol. II, pp. 59–61):

> DETECTIVE BOUSQUET:  Because now you've implicated
> yourself, I have to read you your rights, okay?

> MR. STEELE:  Okay.

> DETECTIVE BOUSQUET:  It's just to — it's your rights as
> given to you by the Amendments, okay?

> MR. STEELE:  Okay.

> DETECTIVE BOUSQUET:  Okay. You have the right to
> remain silent; do you understand that?

> MR. STEELE:  Yes, sir.

> DETECTIVE BOUSQUET:  Anything you say can and will be
> used against you in the court of law; do you understand that?

> MR. STEELE:  Yes, sir.

> DETECTIVE BOUSQUET:  You have the right to talk to a
> lawyer and have him present when you are questioned; do you
> understand that?

> MR. STEELE:  Yes, sir.

> DETECTIVE BOUSQUET:  If you cannot afford to hire a
> lawyer, one will be appointed to represent you before any
> questioning, if you wish.

> MR. STEELE:  Yes, sir.

> DETECTIVE BOUSQUET:  You can decide at any time to
> exercise your rights and not answer any questions or make any
> statements. Alfredie, do you understand each of these rights
> that I've explained to you?

> MR. STEELE:  Yes, sir.

> DETECTIVE BOUSQUET:  Having these rights in mind, do
> you wish to speak to us, to go into depth in regards to this case?

> MR. STEELE: No, sir, I want to speak to a lawyer.

Detective Bousquet testified that once Steele invoked his right to remain silent, he and the other officers determined that they had insufficient evidence to detain Steele and decided to take Steele home.  (Respondent's Exhibit 4, Vol. II, p. 63)

At the first suppression hearing Detective James Medley testified that he and Detective Christensen took Steele home after the initial interview.  Detective Medley testified that "[o]n the way home [Steele] was upset, he was crying.  I explained to him that I would not contact him nor anybody at the Sheriff's Office would contact him.  That if he wanted to talk with us, any detective, any deputy, he would have to make the initial contact.  Right after that, he uttered a statement stating that he didn't mean to shoot that man."  (Respondent's Exhibit 4, Vol. II, transcript of March 4, 2004, suppression hearing, p. 74)  Detective Medley and Detective Christensen noticed Steele's footprints in a sandy area near his home and investigated.  Detective Medley encountered Darren Hambrick, an acquaintance of Steele's mother, outside Steele's home and Hambrick inquired of Detective Medley why he had not arrested Steele.  Detective Medley advised Hambrick "that he could not act as an agent for the sheriff's office, that [Steele] would have to have come back," and that if Steele "wanted to talk to [the police], that he would have to make contact with the sheriff's office."  (Respondent's Exhibit 4, Vol. II, p. 77)  Detective Medley further advised Hambrick that he "had to be careful that [he] didn't make [Hambrick] an agent of the sheriff's

office because that would be illegal for [him ] to use [Hambrick] to get [Steele] to

come back down and give a statement" to the police. (Respondent's Exhibit 4,

Vol. II, p. 77–78)

Detective Medley testified at the second suppression hearing that less than

three hours after he took Steele home Steele called him and asked to return to the

sheriff's office. (Respondent's Exhibit 4, Vol. III, p. 40) When Detective Medley and

Detective Christensen returned to Steele's home Steele said that he would voluntarily

accompany them to the sheriff's office. (Respondent's Exhibit 4, Vol. III,

p. 41) Steele rode in the front passenger seat of Detective Medley's car. Detective

Medley testified that Steele was not in custody at that time and that Steele was

"absolutely" free to leave. (Respondent's Exhibit 4, Vol. III, p. 42) After arriving at

the sheriff's office Detective Medley and Detective Christensen took Steele to an

interview room equipped with audio and video monitoring. Detective Medley asked

Steele to execute a *Miranda* waiver and Steele agreed.[13] (Respondent's Exhibit 4,

Vol. III, p. 44)

Steele testified at the second suppression hearing that when Detective Medley

brought him home he saw at least four other police cars near his house.

(Respondent's Exhibit 4, Vol. III, pp. 76–77) Steele saw an officer wearing all black

clothing with the word "sheriff" on the back of the officer's shirt. Steele believed this

officer was a member of the SWAT team or task force "because a regular police

---

[13] The prosecutor played the video of Steele's interview at the suppression hearing. The
video shows Steele executing the *Miranda* waiver. (Respondent's Exhibit 4, Vol. III, pp. 43–47)

officer don't wear that." (Respondent's Exhibit 4, Vol. III, p. 78)  Steele believed that the reason he was brought home from the sheriff's office was because the officers "wanted to do something" to him and it "seemed like they wanted to kill [him or something because [he] ain't supposed to be there." (Respondent's Exhibit 4, Vol. III, p. 78)  Steele feared for the safety of his family and felt that he did not have a choice but to return to the sheriff's office the second time. (Respondent's Exhibit 4, Vol. III, p. 79)

The record supports the state court's denial of Steele's motions to suppress. Steele voluntarily appeared at the sheriff's office with his mother for the initial interview. *See Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1195 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 2049 (2013) (finding that a suspect's desire to speak with police indicates voluntariness).  The record shows no evidence of threat or coercion by the police.  Steele was neither advised that he could not leave the initial interview nor physically restrained to the degree associated with a formal arrest. *Stansbury*, 511 U.S. at 320, *Alvarado*, 541 U.S. at 661.  Even after Steele implicated himself in the crime, the police did not arrest him but took him home.  Steele voluntarily returned to the sheriff's office after telephoning the sheriff's office and requesting to resume the interview.  Steele presents evidence of neither threat, nor coercion, nor physical restraint by the police at the second interview.  Because Steele fails to establish that he was in custody when he uttered his statements to the police, he cannot establish a Fifth Amendment violation under *Miranda*.  *See United States v.*

*Brown*, 441 F.3d 1330, 1347–49 (11th Cir. 2006) (finding that pre-custodial

questioning requires no *Miranda* warning).  Steele's failure to show the objective

unreasonableness of the state court's rejection of his motions to suppress precludes

relief under Section 2254.  *See Alvarado*, 541 U.S. at 665 ("Relief is available under

§ 2254(d)(1) only if the state court's decision is objectively unreasonable.").

Steele's argument of entitlement to relief under *Missouri v. Seibert*, 542 U.S. 600

(2004), likewise affords him no relief.  *Seibert* examines an interrogation procedure in

which a police officer consciously withholds the *Miranda* warning during a custodial

interrogation until the interrogation produces a confession, issues the *Miranda*

warning, and re-obtains a confession.  542 U.S. at 604.  *Seibert* holds that the second,

post-*Miranda* confession is inadmissible because the police deliberately delayed the

*Miranda* warning in an attempt to elicit a confession.  Steele cannot obtain relief

under *Seibert* because he fails to establish that he was in custody during the initial

interview as required for application of *Miranda*.

## III.   MOTIONS

In his motion for "immediate relief" (Doc. 29) Steele argues his federal

application should be granted.  In his motion for the writ of mandamus (Doc. 30)

Steele argues entitlement to relief on ground eleven of his federal application.  As

this order explains, none of the grounds in the federal application warrant relief.

Consequently, both the motion for immediate relief (Doc. 29) and the motion for

the writ of mandamus (Doc. 30) lack merit.

Steele also seeks appointment of counsel.  A federal habeas applicant possesses no automatic constitutional right to legal representation in a federal habeas corpus proceeding.  *Johnson v. Avery*, 393 U.S. 483, 488 (1969).  Appointment of counsel is warranted only when due process or the interest of justice so requires.  18 U.S.C. § 3006A.  *See also Hooks v. Wainwright*, 775 F.2d 1433, 1438 (11th Cir. 1985) ("This Circuit has recognized on a case-by-case evaluation that for certain individuals due process or 'the interests of justice' may require the appointment of a lawyer.").  Because Steele's federal application warrants no relief, the motion for appointment of counsel (Doc. 31) lacks merit.

Accordingly, Steele's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  Each of Steele's motions for immediate relief (Doc. 29), the writ of mandamus (Doc. 30), and the appointment of counsel (Doc. 31) is **DENIED**.  The clerk must enter a judgment against Steele and close this action.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Steele is not entitled to a certificate of appealability  ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Steele must show that reasonable jurists would find debatable both (1) the merits of the

underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C.
§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d
926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would
debate either the merits of the claims or the procedural issues, Steele is entitled to
neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in
forma pauperis* is **DENIED**.  Steele must obtain permission from the circuit court to
appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on July 6, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 36 -